## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| YUHAN LIU,<br><br>                Plaintiff,<br>    v.<br><br>THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company, and AMELIA LAFONT, an individual,<br><br>                Defendants. | Civil Action No.: 2:25-cv-11455-BRM-CI<br><br>Hon. Brandy R. McMillion |

## FIRST AMENDED BRIEF OF DEFENDANTS IN SUPPORT OF MOTION TO DISMISS COMPLAINT, WITH PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES........................................................................................ iv

INTRODUCTION ................................................................................................1

UNDERLYING FACTS ......................................................................................1

STANDARD OF REVIEW ..................................................................................8

ATTORNEY CLIENT PRIVLEGE ........................................................................8

ARGUMENT .....................................................................................................9

   A.  DEFENDANTS DID NOT ACT IN BREACH OF CONTRACT ..............10

   B.  DEFENDANTS DID NOT BREACH A FIDUCIARY DUTY ...................12

   C.  DEFENDANTS DID NOT COMMIT PROFESSIONAL MALPRACTICE
13

   D.  DEFENDANTS DID NOT COMMIT NEGLIGENT MISREPRESENTATION .....................................................................................15

   E.  DEFENDANTS DID NOT COMMIT FRAUDULENT MISREPRESENTATION .....................................................................................18

   F.  PLAINTIFF SHOULD BE DEEMED A VEXATIOUS LITIGANT ..........20

CONCLUSION ..................................................................................................22

CERTIFICATE OF SERVICE ...................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 458 N.W.2d 671, 672-73 (Mich. Ct. App. 1990) ................................................................................ 17, 19

*Alfieri v. Bertorelli*, 295 Mich. App. 189, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012) ................................................................................ 17, 20

*Alpha Capital Mgmt., Inc. v. Rentenbach*, 287 Mich. App. 589, 792 N.W.2d 344, 355 (Mich. Ct. App. 2010) ................................................................ 12

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ................................................ 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ......................... 8

*Brownell v. Garber*, 199 Mich. App. 519, 524, 503 N.W.2d 81 (1993) ............... 11

*Broz v. Plante & Moran, PLLC*, 326 Mich. App. 528, 928 N.W.2d 292, 306 (Mich. Ct. App. 2018) ................................................................ 17, 19

*Buckowski v. McKay*, 441 Mich. 96, 100 ................................................ 15

*Cardello-Smith v Combs*, ___BR___; 2025 U.S. Dist. LEXIS 135000, at *16 (ED Mich, June 30, 2025) ................................................................ 21

*Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586, 513 N.W.2d 773 (1994) 14

*City of Dearborn v DLZ Corp*, 111 F Supp 2d 900, 904 (ED Mich, 2000) ........... 11

*Coates v. Bastian Bros., Inc.,* 276 Mich. App. 498, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007) ................................................................ 10

*Coleman v. Gurwin*, 443 Mich. 59, 503 N.W.2d 435, 436-37 (1993)....................13

*Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016)........12

*Eggleston v. Boardman*, 37 Mich. 14, 16 (1877)......................................................14

*FCA US LLC v Bullock*, 446 F Supp 3d 201, 208 (ED Mich, 2020)............... 10, 13

*Friedman v. Dozorc*, 412 Mich. 1, 22, 312 N.W.2d 585 (1981) ............................15

*Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 590-91 (1981)......................14

*Gerber v Blau*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 49201, at *12-13 (ED

   Mich, Mar. 18, 2025)..........................................................................................15

*Hello Farms Licensing MI LLC v GR Vending MI, LLC*, ___F Supp 3d___; 2023

   U.S. Dist. LEXIS 164647, at *3 (ED Mich, Sep. 15, 2023) .................................9

*Jewell v. Holzer Hosp. Found*, 899 F.2d 1507, 1513 (6th Cir. 1990) ......................9

*Leibel v GMC*, 250 Mich App 229; 646 NW2d 179 (2002)......................................9

*Mable Cleary Trust v. Edward-Mariah Muzyl Trust*, 262 Mich. App. 485, 502 (2004)

   ...........................................................................................................................15

*Marks v Schafer & Weiner, PLLC*, ___F Supp 3d___; 2021 U.S. Dist. LEXIS 52019,

   at *17 (ED Mich, Mar. 19, 2021) .......................................................................11

*McKenzie v Berggren*, 99 F App'x 616 (CA 6, 2004) .............................................12

*Miller-Davis Co. v. Ahrens Constr., Inc*., 495 Mich. 161, 848 N.W.2d 95, 104 (Mich.

   2014)...................................................................................................................10

*Nash v City of Grand Haven*, 321 Mich App 587; 909 NW2d 862 (2017)..............9

v

*Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 599 N.W.2d 546, 554 (Mich. Ct. App. 1999) ........................................................................18

*People v Rolark*, ___NW2d___; 2013 Mich. App. LEXIS 911 (Ct App, May 23, 2013) .............................................................................................9

*People v. Trakhtenberg*, 493 Mich. 38, 44-45, 826 N.W.2d 136 (2012) ...............15

*Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 698 N.W.2d 900, 908 (Mich. Ct. App. 2005) ............................13

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003) ...........................................................................10

*Radtke v. Miller, Canfield, Paddock & Stone*, 453 Mich. 413, 424, 551 N.W.2d 698 (1996).....................................................................................14

*Simko v. Blake*, 448 Mich. 648, 658, 532 N.W.2d 842 (1995)................................15

*Titan Ins. Co. v. Hyten*, 491 Mich. 547, 817 N.W.2d 562, 567-68 (Mich. 2012) ...18

*Tocco v Richman Greer Prof Ass'n*, 553 F App'x 473 (CA 6, 2013) ......................18

*Wells Fargo Advantage Nat'l Tax Free Fund v Helicon Assoc*, ___F Supp 2d___; 2011 U.S. Dist. LEXIS 171208, at *10-11 (ED Mich, Jan. 21, 2011).................15

*Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 782 (2003) .......10

*Woods v. Gursten*, No. 194523, 1998 Mich. App. LEXIS 956, 1998 WL 1988581, at * 3 (Mich. App. Dec.15, 1998)........................................................15

*Yuhan Liu v Ohio State Univ*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 111900 (SD Ohio, June 12, 2025)......................................................................6

**Other Authorities**

7 Am. Jur. 2d Attorneys at Law § 137......................................................10

**Rules**

Fed. R. Civ. P. 11 ..................................................................................22

Fed. R. Civ. P. 12(b)(6)...........................................................................8

Fed. R. Evid. 501 ....................................................................................9

MCR 7.216.............................................................................................20

MCR 7.316.............................................................................................20

## INTRODUCTION

The present case is nothing more than an attempt to abuse the United States legal system by a foreign national to obtain goods and services without payment.

## UNDERLYING FACTS

1.      KAltman Law is an education law firm headquartered in the State of Michigan.

2.      Amelia LaFont is a licensed attorney with KAltman Law who is a resident and domiciliary of the State of Arkansas.

3.      Plaintiff was a student at The Ohio State University ("OSU") and seeking representation in relation to her time at OSU as a student.

4.      KAltman Law had an initial, consultation with Plaintiff on April 21, 2025.

5.      During the April 21, 2025 call, Plaintiff was quoted a fee of $11,0000 to assist in getting her accommodation in place at OSU.

6.      Plaintiff paid the fee, less a $5 wire fee charged by her bank on or about April 23, 2025.

7.      Representatives from KAltman Law immediately began work on Plaintiffs matter.

8.      On April 25, 2025, Plaintiff requested that KAltman Law pause efforts on her behalf.

1

9.     Plaintiff requested for work to again begin on April 28, 2025.

10.    On April 30, 2025, Plaintiff signed her formal engagement agreement with KAltman Law.

11.    That engagement agreement clearly outlined the work that was to be performed.

12.    The engagement agreement provides that KAltman Law can not guarantee an outcome, and further, that a lawsuit was not included in the representation related to Plaintiff's student defense matter against OSU.

13.    What was included in the agreement was work at the administrative level within the school to assist in getting Plaintiff's accommodations in place so that she could sit for her final exam.

14.    Additionally, it outlined that the total fee was $11,000 for that work.

15.    Plaintiffs engagement of KAltman Law was a flat fee, fixed rate, as outlined in her signed engagement letter.

16.    At no time did KAltman Law promise to file a lawsuit or to make an attempt to get a temporary restraining order on Plaintiffs behalf.

17.    This is specifically excluded (and bolded) in the fee agreement that Plaintiff signed.

18.    KAltman Law immediately began work on Ms. Plaintiff's case upon her engagement of our firm.  These services included:

- Case assessment and intake by senior team members;

- Strategic guidance during multiple consultation calls;

- Internal analysis and planning of legal strategy based on Ms. Liu's objectives;

- Coordinated outreach and direct communication with The Ohio State University;

- Participation in a formal meeting with university officials that resulted in accommodations being approved that had previously been denied;

- Preparation of an additional written advocacy request that was in progress at the time of her termination of our services.

19.     Upon Defendant beginning work with Plaintiff, it was not initially revealed the extensive interactions that Plaintiff had already had with the disability services office at OSU.

20.     Defendants learned that Plaintiff had failed to follow designated processes for appeals or complaints with the disability office at OSU.

21.     The subsequent meetings with the OSU office were professional and productive with significant progress made.

22.     The goal was to get Plaintiff an accommodation to take a math test remotely with extra time.

23.     This accommodation would allow Plaintiff to finish the course work

and complete her degree from OSU.

24.     When Plaintiff initially retained KAltman Law, Plaintiff represented to Lafont that Plaintiff had gained mastery of the course materials and could pass the exam if only it would be administered with accommodations beyond what the school was then willing to provide.

25.     Plaintiff eventually admitted to KAltman Law that she had not attended the course at issue regularly and had not learned the materials.

26.     The school granted Plaintiffs request to take the exam remotely with different proctors.

27.     Plaintiff then provided to Defendants that in fact she could not pass the exam as was then written and would need an easier exam to pass the course.

28.     Lafont explained to Plaintiff that it was a different request, and likely not a reasonable accommodation request.

29.     Lafont drafted a response to the disability office to attempt to get Plaintiff the alternative exam format she demanded.

30.     Lafont's response letter was nearly complete when Plaintiff abruptly terminated our services.

31.     LaFont promptly stopped work, and the response was not sent out.

32.     Amongst other things, Plaintiff also asserted that she needed different arrangements for the exam because she was hospitalized during the initial final exam

period.

33.    Plaintiff was unable to provide supporting documentation, following up on the school's request for medical documentation of the hospitalization.

34.    At the last minute, Plaintiff provided that she was unable to attend the May 5, 2025 meeting due to international travel.

35.    Plaintiff asked Defendants to have the meeting without her- though Plaintiff ultimately chose to attend the meeting with counsel.

36.    The meeting proceeded on May 5, 2025 with a largely favorable follow-up email from the school.

37.    It was later discovered that Plaintiff's allegation of international travel was false.

38.    Plaintiff terminated our services on May 6, 2025 at 6:39 PM.

39.    On May 6th at 6:45 PM, Plaintiff responded directly to OSU's disability office indicating that she rejected their 'internal processes' and refused to engage in any further dialogue with them or pursue their established appeal or complaint processes.

40.    Plaintiff insisted on Defendants filing for a temporary restraining order against OSU for her alternative accommodation requested.

41.    Defendants advised Plaintiff that a lawsuit and subsequent request for a TRO was not included in her engagement agreement with KAltman Law.

5

42.     Further, Plaintiff was advised that a TRO was unlikely to be granted  as Plaintiff still had ample time to take the exam and graduate before she risked incurring any harm whatsoever.

43.     OSU's deadline for Plaintiff to conclude her Incomplete courses was June 15th.

44.     Once KAltman Law had achieved Plaintiff's desired result, she then returned to KAltman Law and communicated that she did not feel that she was prepared to take the final exam, and needed additional accommodations and/or a different scale to be applied to her given her disabilities.

45.     After her termination of our services, Plaintiff filed suit against Ohio State University (*Yuhan Liu v Ohio State Univ*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 111900 (SD Ohio, June 12, 2025)), pro se.

46.     Ultimately, the TRO requested was quickly denied.

47.     The Court determined that Plaintiff was unlikely to succeed on the merits because, just as Defendant explained to her, she was "not entitled to her preferred accommodations, only reasonable ones."

48.     The Court also found that she had not demonstrated retaliation, irreparable harm, harm to others, or harm to the public interest.

49.     During this litigation, OSU revealed that it would accept a lower grading threshold of 60% instead of 70% to allow Plaintiff to pass her course and

6

graduate from the university.

50.     Although Plaintiff initially rejected this lower grading threshold as beneath her, she appears to have recently accepted it and taken the final exam with the accommodations we negotiated for her, specifically, remote attendance and different proctors.

51.     Plaintiff filed over 60 documents in that case prior to defendants even appearing in the case.

52.     From the filings in *Liu v. The Ohio State University*, it appears as though the resolution is exactly what my firm diligently assisted in putting in place.

53.     The *Liu* case has since been dismissed.

54.     Plaintiff is a Chinese national that is weaponizing the U.S. District Courts to receive goods and services from U.S. citizens and educational institutions at no cost to herself.

55.     The $11,000 flat fee Plaintiff paid for the services of KAltman Law is designated in the engagement as earned upon receipt, which is standard for legal services of this nature.

56.     Nonetheless, KAltman Law offered a $3,000 good-faith refund in recognition that the engagement concluded before our full scope of work was completed.

57.     KAltman Law's offer was made not because of any deficiency in

7

service, but to bring closure to the matter and avoid protracted disputes.

58.     Plaintiff went on to file numerous complaints including a complaint with the Better Business Bureau**. [Exhibit A].**[1]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a defendant is entitled to a dismissal of a plaintiff's complaint when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a plaintiff to survive a defendant's motion to dismiss, a plaintiff's complaint must contain sufficient factual information, accepted as true for purposes of the motion, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The test for "facial plausibility" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Where a plaintiff alleges facts "that are merely consistent with a defendant's liability," a plaintiff "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678, *citing Twombly*, at 557. Pursuant to Fed.R.Civ.P. 12(b)(6), this Court is not required to accept legal conclusions as true. *Id.*

## ATTORNEY CLIENT PRIVLEGE

Since jurisdiction in the instant case is based on diversity and only state law

---

[1] The Better Business Bureau complaint was filed by the Plaintiff and includes for third party consumption the engagement agreement between Plaintiff and Defendants as well as additional documentation to which Plaintiff has waived the attorney-client privilege.

claims advanced, Michigan law governs the attorney-client privilege question. Fed. R. Evid. 501; *Jewell v. Holzer Hosp. Found*, 899 F.2d 1507, 1513 (6th Cir. 1990); *Hello Farms Licensing MI LLC v GR Vending MI, LLC*, ___F Supp 3d___; 2023 U.S. Dist. LEXIS 164647, at *3 (ED Mich, Sep. 15, 2023).

Once privileged information is disclosed to a third party, the privilege is generally waived, as the communication is no longer confidential. *Leibel v GMC*, 250 Mich App 229; 646 NW2d 179 (2002). This principle is well-established in Michigan law, where courts have held that the privilege disappears when the client voluntarily discloses the communication to a third party or fails to take precautions to maintain its confidentiality. *Nash v City of Grand Haven*, 321 Mich App 587; 909 NW2d 862 (2017).

In this case, the client disclosed confidential information to the Better Business Bureau, a third party. Such disclosure constitutes a waiver of the attorney-client privilege because the communication was no longer intended to remain confidential. *Leibel v. GMC*, 250 Mich. App. 229. Michigan courts have consistently held that intentional and voluntary disclosure of privileged communications to third parties results in a waiver of the privilege. *People v Rolark*, ___NW2d___; 2013 Mich. App. LEXIS 911 (Ct App, May 23, 2013). Therefore, any documents or communications related to the disclosed information are no longer protected by the attorney-client privilege.

**ARGUMENT**

9

### A.       DEFENDANTS DID NOT ACT IN BREACH OF CONTRACT

A party asserting a breach of contract must establish that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc*., 495 Mich. 161, 848 N.W.2d 95, 104 (Mich. 2014).When construing a contract, a court's primary objective is to determine the parties' intent. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). When a contract is clear and unambiguous, the provisions reflect the parties' intent as a matter of law, and courts are to enforce the language as written in accordance with its plain and ordinary meaning. *Coates v. Bastian Bros., Inc.,* 276 Mich. App. 498, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007); *FCA US LLC v Bullock*, 446 F Supp 3d 201, 208 (ED Mich, 2020).

The first element is not at issue as there was a signed contract in place.

The contract in issue is crystal clear as to the services that were to be provided to Plaintiff. Plaintiff was to be provided with student defense services in relation to her accommodations at OSU. The signed contract is explicitly clear that the representation does not include litigation. The term is not hidden away or squandered at the bottom of the contract. Instead, it is bolded for visibility.

Courts have no commission to ignore a signed contract that sets the terms of an attorney-client relationship. 7 Am. Jur. 2d Attorneys at Law § 137; *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 782 (2003). ("[C]ourts are to enforce the agreement as written absent some highly unusual circumstance. . .

. The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."). *Marks v Schafer & Weiner, PLLC*, ___F Supp 3d___; 2021 U.S. Dist. LEXIS 52019, at *17 (ED Mich, Mar. 19, 2021).

Plaintiff fails to satisfy the third prong of the alleged breach of contact claim. Plaintiff must show that a breach occurred and that there was a subsequent injury as a result of the breach. Plaintiff can show no such injury. Defendants acted under the terms of the contract to get Plaintiff accommodation in place that would allow for her to take an examination in her math class. Defendants were successful in obtaining the accommodations which Plaintiff sought. Plaintiff received the accommodations in which Defendants worked to get put in place which were ultimately successful in assisting her in graduating from OSU. Plaintiff did not suffer any injury as a result of her alleged breach of contract.

Further, the contract claim should be dismissed as redundant to the alleged malpractice claim.

"[A] malpractice action is predicated upon the failure to exercise the requisite skill, whereas a contract action is based upon the professional's failure to perform 'a special duty'." *Brownell v. Garber*, 199 Mich. App. 519, 524, 503 N.W.2d 81 (1993). In *Brownell*, the plaintiff filed suit against an attorney for negligence and breach of contract. The court found that the "'contractual duties allegedly breached by defendant [were] indistinguishable from the duty to render legal services in accordance with the applicable standard of care," and treated the asserted breach of contract claim as a claim of professional malpractice. *Id*. at 525;

*City of Dearborn v DLZ Corp*, 111 F Supp 2d 900, 904 (ED Mich, 2000).

The rule in *McKenzie* is a rule against redundancy, and that a breach of contract claim is allowed as an alternative pleading where a malpractice claim has failed. Claims against attorneys on the basis of inadequate representation sound in tort and are governed by malpractice law, "even though a plaintiff may assert that the attorney's actions breached a contract." *Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 458 N.W.2d 671, 673 (Mich. Ct. App. 1990). As *McKenzie* instructs, "The Aldred case has also been interpreted by the Michigan courts as holding that the only claim that may be brought against one's attorney for inadequate legal services is a claim for legal malpractice." *McKenzie v Berggren*, 99 F App'x 616 (CA 6, 2004). Plaintiffs breach of contract claim is for inadequate legal representation. That claim is barred and must be dismissed.

## B.    DEFENDANTS DID NOT BREACH A FIDUCIARY DUTY

"The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages." *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016) (citation and intern quotations marks omitted). The existence of an attorney-client relationship gives rise to fiduciary duties owed by the lawyer to the client. *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 309 N.W.2d 645, 648 (Mich. Ct. App. 1981), and these fiduciary duties extend to both current and former clients, *Alpha Capital Mgmt., Inc. v. Rentenbach*, 287 Mich. App. 589, 792 N.W.2d 344, 355 (Mich. Ct. App. 2010). "Damages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence

has been reposed and betrayed." *Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 698 N.W.2d 900, 908 (Mich. Ct. App. 2005); *FCA US LLC v Bullock*, 446 F Supp 3d 201, 214 (ED Mich, 2020).

Plaintiff's breach of fiduciary duty claim against Defendants involve a determination of whether each defendant breached their respective duties to Plaintiff and whether their conduct caused Plaintiff's injuries.

Plaintiff entered into a contract with KAltman Law for legal services related to her education at OSU and subsequent accommodation requests. Defendant LaFont is a licensed attorney with KAltman Law assigned to Plaintiff's matter. A valid contract outlines the representation of Defendants on behalf of Plaintiff. No breach of contract exists. No breach of fiduciary duty exists. Defendants acted within the executed engagement agreement, diligently and professionally for Plaintiff. As stated previously, Plaintiff can not show an injury in relation to her engagement for legal services with the Defendants. As such, Plaintiffs claim for breach of fiduciary duty must be dismissed.

## C.   DEFENDANTS DID NOT COMMIT PROFESSIONAL MALPRACTICE

In Michigan, a plaintiff alleging legal malpractice has the burden of proving all of the following elements: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the client; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged. *Coleman v. Gurwin*, 443 Mich. 59, 503 N.W.2d 435, 436-37 (1993) (footnotes

omitted). *Coleman* also establishes the extent of an attorney's duty to his client: "Whenever an attorney or solicitor is retained in a cause, it becomes his implied duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management thereof." *Eggleston v. Boardman*, 37 Mich. 14, 16 (1877). The question of an attorney's duty to his client is one of law. *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 590-91 (1981).

An attorney-client relationship existed between the parties. Plaintiff can not show negligence in the legal representation. Plaintiffs complaints with representation that Defendants provided to Plaintiff are that they did not file a TRO on Plaintiff's behalf. Something that was clearly and concisely outlined as not being included in the engagement agreement. Defendants did not waiver in their representations of Plaintiff. Instead, Defendants were successful in getting Plaintiff the accommodations in which she sought from OSU. Plaintiff can not show any injury resulting from Defendants representation of Plaintiff.

To establish causation, a legal malpractice plaintiff must show that, but for the attorney's alleged malpractice, he would have been successful in the underlying suit. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586, 513 N.W.2d 773 (1994). "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id.* A plaintiff "must prove professional negligence, i.e., that counsel failed to exercise reasonable skill, care, discretion, and judgment in the conduct and management of the underlying case." *Radtke v. Miller, Canfield, Paddock & Stone*, 453 Mich. 413, 424, 551 N.W.2d 698 (1996). "The plaintiff must also establish that, but for the

14

negligence, the outcome of the case would have been favorable to the plaintiff." *Coleman*, 443 Mich. at 63. When "an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment." *Simko v. Blake*, 448 Mich. 648, 658, 532 N.W.2d 842 (1995); see also *Woods v. Gursten*, No. 194523, 1998 Mich. App. LEXIS 956, 1998 WL 1988581, at * 3 (Mich. App. Dec.15, 1998) (holding that "legitimate areas of attorney judgment ... may not be second-guessed"). This is sometimes referred to as the "attorney judgment rule." *People v. Trakhtenberg*, 493 Mich. 38, 44-45, 826 N.W.2d 136 (2012).*Gerber v Blau*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 49201, at *12-13 (ED Mich, Mar. 18, 2025).

## D.   DEFENDANTS DID NOT COMMIT NEGLIGENT MISREPRESENTATION

In Michigan, a claim for negligent misrepresentation exists when the plaintiff "justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Mable Cleary Trust v. Edward-Mariah Muzyl Trust*, 262 Mich. App. 485, 502 (2004). In determining whether or not a duty exists, the Court must ask whether "'the defendant is under any obligation for the benefit of the particular plaintiff.'" *Buckowski v. McKay*, 441 Mich. 96, 100 (quoting *Friedman v. Dozorc*, 412 Mich. 1, 22, 312 N.W.2d 585 (1981)). A party to a contract is only liable if his or her "nonfeasance or misfeasance stems from the contractual duty originally imposed and does not render [that party] liable for action beyond such contractually-imposed duty, i.e., to perform in a diligent and reasonably skillful workmanlike

manner." *Wells Fargo Advantage Nat'l Tax Free Fund v Helicon Assoc*, ___F Supp 2d___; 2011 U.S. Dist. LEXIS 171208, at *10-11 (ED Mich, Jan. 21, 2011). Plaintiff cannot demonstrate reasonable reliance upon Defendants representatives as discussed and she therefore cannot satisfy the elements of a claim for negligent misrepresentation. The negligent misrepresentation claim fails as a matter of law.

Defendant KAltman Law is a Michigan based law firm specializing in education law. KAltman Law operates an entire division of the firm on a student defense basis. The department works with students, such as Plaintiff, on a flat fee basis to obtain disability accommodations as well as other administrative legal remedies for students. Plaintiff retained Defendants for these student defense services to obtain accommodations in relation to her education at OSU. The engagement agreement is crystal clear that litigation, and thus a TRO, are not included in the representation. Defendants were successful in obtaining the sought after accommodations for Plaintiff. Defendants is not misrepresent their services or the terms of engagement. Plaintiff is not justified in relying on an item that was expressly prohibited from the representation agreement.

Plaintiff can not show negligence in the legal representation. Plaintiffs complaints with representation that Defendants provided to Plaintiff are that they did not file a TRO on Plaintiff's behalf. Something that was clearly and concisely outlined as not being included in the engagement agreement. Defendants did not waiver in their representations of Plaintiff. Instead, Defendants were successful in getting Plaintiff the accommodations in which she sought from OSU. Plaintiff can

not show any injury resulting from Defendants representation of Plaintiff.

The negligent misrepresentation claim is duplicative of malpractice and should be dismissed. Michigan courts look at the basis of the plaintiff's complaint to determine the type of action alleged. *Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 458 N.W.2d 671, 672-73 (Mich. Ct. App. 1990) (citation omitted) ("The gravamen of an action is determined by reading the claim as a whole."). Claims against an attorney based on inadequate representation are malpractice claims. *Id.;* see also *Broz v. Plante & Moran, PLLC*, 326 Mich. App. 528, 928 N.W.2d 292, 306 (Mich. Ct. App. 2018) ("a claim arising out of the fiduciary relationship between a professional and the professional's client alleging that the professional failed to adequately provide professional services sounds in malpractice, regardless of the label given to the claim."); vacated on other grounds, 928 N.W.2d 698 (Mich. 2019). As in *Aldred*, the complaint shows that Defendants were retained to exercise appropriate legal skill in providing legal representation. Even Plaintiff's negligent representation claim alleges that Defendants owed Plaintiff a duty of care by virtue of their fiduciary relationship as legal counsel to Plaintiff. This points to a malpractice claim. And negligent misrepresentation claims require a showing like professional malpractice: "A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012) (citation omitted). Finally, in *Broz,* the Michigan Court of Appeals affirmed the dismissal of the negligent misrepresentation, breach of

fiduciary duty, and estoppel claims as redundant to the professional malpractice claim. 928 N.W.2d at 306. Thus, the negligent misrepresentation claim should be dismissed as a matter of law.

### E. DEFENDANTS DID NOT COMMIT FRAUDULENT MISREPRESENTATION

In order to establish a claim of fraudulent misrepresentation under Michigan law, a plaintiff must prove:(1)[t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Tocco v Richman Greer Prof Ass'n*, 553 F App'x 473 (CA 6, 2013). Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 817 N.W.2d 562, 567-68 (Mich. 2012) (internal citations omitted). That reliance must occur to sustain a claim for fraud is well-settled in Michigan's courts, as is the requirement that the reliance be reasonable. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 599 N.W.2d 546, 554 (Mich. Ct. App. 1999). Plaintiff cannot demonstrate reasonable reliance upon Defendants representatives as discussed and she therefore cannot satisfy the elements of a claim for fraudulent misrepresentation. The fraudulent misrepresentation claim fails as a matter of law.

Plaintiff can not prove a single element of a fraudulent misrepresentation claim. No false statement was made. Defendant KAltman Law is a Michigan based

law firm specializing in education law. KAltman Law operates an entire division of the firm on a student defense basis. The department works with students, such as Plaintiff, on a flat fee basis to obtain disability accommodations as well as other administrative legal remedies for students. Plaintiff retained Defendants for these student defense services to obtain accommodations in relation to her education at OSU. The engagement agreement is crystal clear that litigation, and thus a TRO, are not included in the representation. Defendants were successful in obtaining the sought after accommodations for Plaintiff. Defendants is not misrepresent their services or the terms of engagement. Plaintiff is not justified in relying on an item that was expressly prohibited from the representation agreement.

The fraudulent misrepresentation claim is duplicative of malpractice and should be dismissed. Michigan courts look at the basis of the plaintiff's complaint to determine the type of action alleged. *Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 458 N.W.2d 671, 672-73 (Mich. Ct. App. 1990) (citation omitted) ("The gravamen of an action is determined by reading the claim as a whole."). Claims against an attorney based on inadequate representation are malpractice claims. *Id.;* see also *Broz v. Plante & Moran, PLLC*, 326 Mich. App. 528, 928 N.W.2d 292, 306 (Mich. Ct. App. 2018) ("a claim arising out of the fiduciary relationship between a professional and the professional's client alleging that the professional failed to adequately provide professional services sounds in malpractice, regardless of the label given to the claim."); vacated on other grounds, 928 N.W.2d 698 (Mich. 2019). As in *Aldred*, the complaint shows that Defendants were retained to exercise appropriate legal skill in providing legal representation. Even

Plaintiff's negligent representation claim alleges that Defendants owed Plaintiff a duty of care by virtue of their fiduciary relationship as legal counsel to Plaintiff. This points to a malpractice claim. And negligent misrepresentation claims require a showing like professional malpractice: "A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012) (citation omitted). Finally, in *Broz,* the Michigan Court of Appeals affirmed the dismissal of the negligent misrepresentation, breach of fiduciary duty, and estoppel claims as redundant to the professional malpractice claim. 928 N.W.2d at 306.

The fraudulent misrepresentation claim should be dismissed as a matter of law.

### F.      PLAINTIFF SHOULD BE DEEMED A VEXATIOUS LITIGANT

MCR 7.316 and  MCR 7.216 govern the standards and procedures for declaring a plaintiff vexatious litigant. . Under MCR 7.316, a party may be declared a vexatious litigator if they habitually, persistently, and without reasonable cause engage in vexatious conduct. This includes filing actions for purposes of hindrance or delay, filing pleadings grossly lacking in propriety, or disregarding the requirements of fair presentation of issues. *Id.* The court may impose restrictions such as requiring the party to obtain leave before filing further actions or mandating

the payment of filing fees. *Id.*

"District courts are obligated to protect themselves from vexatious litigants[.]" *Cardello-Smith v Combs*, ___BR___; 2025 U.S. Dist. LEXIS 135000, at *16 (ED Mich, June 30, 2025). The present case is nothing more than an attempt to abuse the United States legal system by a foreign national to obtain goods and services without payment.

Plaintiff filed the present lawsuit with the sole purpose of harassing the Defendants. Plaintiff, through her conduct in other United States District Courts, has shown her utter disregard for the legal system of the United States. Plaintiff could not even be bothered to take the time to look into her claims for proper filing. Plaintiff signed her complaint stating that the complaint was factually accurate, which is vastly untrue.

Let's look at a few elementary errors: Plaintiff lists Defendants address as 33233 Woodward Ave, Suite 200, Birmingham, Michigan 48009. Defendants have never been associated with a Woodward address, instead Defendants address is listed on the engagement agreement the parties entered into as well as Defendants website and letterhead provided to Plaintiff throughout the representation. Defendant LaFont is not a resident or domiciliary of the State of Michigan. Defendant LaFont resides and is licensed to practice in Arkansas. Plaintiff provides that she paid a total of $11,350 for services to Defendants, which is an improper number on it's face. Plaintiff could not even follow the directions on the civil cover sheet. When asked to address the nature of the suit "Place an "X" in One Box Only", Plaintiff chose three, 190 Other Contract, 360 Other Personal Injury and 362

21

Personal Injury – Medical Malpractice. Medical Malpractice is improper on its face.

In filing the pro se complaint, Plaintiff signed a Fed. R. Civ. P. 11 statement certifying her complaint. Plaintiff should not be allowed to continue utilizing the United States legal system for her own tirades that have no basis in law. Plaintiff should be deemed a vexatious litigant and faces future Rule 11 motions.

## CONCLUSION

Plaintiff fraudulently filed the present lawsuit. This Honorable Court is permitted to grant Defendants' Motion to Dismiss in its entirety, with prejudice, since Plaintiff has "failed to state a claim upon which relief can be granted."

Dated: July 21, 2025                    Respectfully submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner, Esq.
LAW OFFICE OF KEITH ALTMAN
17515 Nine Mile Road, Suite 1050
Southfield, MI 48075
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendant hereby certifies that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure.

Dated: July 21, 2025                    Respectfully submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner, Esq.